Before we actually get started, two housekeeping questions. We got the court's order allotting one hour total, 30 minutes per side. As we counted them, there were actually four different appeals going on. If the court would indulge us for five extra minutes, an hour and five, we have that divided up. Thank you. We will take 20 minutes for the appellants of the settlement. I will address the jurisdictional issues. Mr. Levy will address the merits of the settlement issues. We'll hope to reserve a few minutes for a reply. You're talking about the... Call it the Beckwith Appeal. And Mr. Yanchunas... Excuse me, are you Mr. Bogard, is that correct? No, Krislav. Mr. Krislav, excuse me, I'm sorry. Krislav, okay. Would you like to just identify yourself for the record, first of all? I'm Clint Krislav. On behalf of the objectors to the settlement, we were in the Illinois state litigation. 20 minutes for us, 15 minutes for Mr. Yanchunas to address the attorney fee issue in Newcomer. And then General Electric and the proponents of the settlement would take a half an hour to respond, I guess, on both things. Yes. I guess my clock starts? It hasn't started yet. Are you ready? Yes. All right. May it please the Court. My name is Clint Krislav. We are on behalf of the objectors to the settlement. This is an issue in which jurisdiction is an issue reviewed de novo by this Court, not on abuse of discretion basis. It either exists or it doesn't. The burden is on those asserting federal jurisdiction. They never met it. There has never been a colorable federal claim. The Court should just have dismissed the case for want of federal jurisdiction. Second, we will show that the settlement is substantively unfair. And finally, although we don't think there's a major question about it, the objectors clearly have standing to raise all these objections. First, the issue of subject matter jurisdiction has been decided in the McCauley case, in which this Court basically said that you look at the nature of the claim. This is a claim of basically roughly $600 per person for people who were wrongly induced to have to buy a new dishwasher. It does not support diversity by no matter what route is thought to be done. Recognizing that, they abandoned the original plaintiffs and the original claims, and they substituted in the end for a settlement new plaintiffs asserting a civil RICO claim. Counsel, before we get to all of that, I'm stuck with the threshold question of whether we have jurisdiction, whether there's jurisdiction in this Court to entertain the claims of the interveners on the basis that they're not parties. What is your standing that gets you to this Court? Devlin against Scardelletti makes it clear that people who objected below, as we did, have standing to appeal. Makes it absolutely clear. But Devlin was, of course, a different kind of class. This Court in Schwartz ruled in a B3 case after Devlin. Which Schwartz? Schwartz. Isn't that an unpublished case? Yes. Aren't you familiar with Local Rule 36? We understand that when it's challenged, as I understand, we don't cite it. Are you familiar with Local Rule 36? I understand we're not. Are you familiar with Local Rule 36? Yes or no? Yes, but I may not understand all of its nuances. Well, it says you can't cite an unpublished disposition. Well, then we'll be glad to rest on Devlin against Scardelletti. The language does not. Well, my question is, you know, you shouldn't have cited it in the first place. Can you give me a reason why you shouldn't be sanctioned for violating the rule? Yes, Your Honor. I mean, the whole purpose, you know, of the unpublished disposition, the regime, is so we wouldn't have to look at those cases again. And the violation of that is wreaks havoc, you know, with the rules of the Court. Your Honor, when citing to an exception which goes against an unpublished opinion, Your Honor, we think that the better-reasoned rule would be that the Court should permit. It doesn't matter what the better-reasoned rule is. The question is what the rule is. If you think some of the rule is better, are you saying you don't have to follow any rule because you think some of the rule is better? We're not, Your Honor. But we do think that we're glad to rest on Devlin against Scardelletti. We think the language of Devlin against Scardelletti makes it clear, does not permit for a distinction. Indeed, this Court, we have cited Holiday Magic, which goes back to 1977. This Court's rule up to Devlin against Scardelletti was that even in B-3 classes, that people who objected below but did not seek formal intervention or were denied formal intervention still had the opportunity to appeal the approval of the settlement. So that if we say that there is this issue left open by Devlin, then we revert back to this Court's holding on that rule, which is that objectors below get to appeal. Otherwise, there is no— Where is this Court's ruling? Holiday Magic, a 1977 ruling, Your Honor, and I believe there are three or four of them that we cite in our brief on this particular issue. Your Honors, otherwise, the only people who would be able to appeal are those who are astute enough to figure out that they need to formally intervene, which doesn't give you anything. You haven't done anything else. If you have objected below, if you have actively challenged the settlement below, you're the only ones that really have standing and an interest in doing that. Your Honors, we had a certified class in Illinois. At the time that they were still negotiating the settlement, it was not done by inadvertence or short treatment. It was deferred for months because of GE's determination that it should wait until the settlement. The Court finally got tired of waiting for it, certified the class. At that point, it was not appropriate to continue doing a settlement, but the state courts have generally deferred to the federal court. I would defer to Mr. Levy to deal with the merits of the settlement, and then I'll be back for a couple minutes and reply. Thank you. Good morning, Your Honors. My name is Lester Levy, and I will deal with the adequacy of the class action settlement and the class notice. Neither was adequate. Six separate judges have determined that GE engaged in deceptive consumer practices and misled consumers into thinking that the dishwashers could not be repaired. In New York, the Supreme Court ordered full restitution to GE consumers who relied on the misinformation about the dishwashers and purchase movements. The Court's findings- Well, what relevance does the New York experience- The same- Yeah, but- That's the relevance. It was an adversary proceeding. The Court ruled that they committed deception, which is one of the elements of the class action, and they ordered full restitution, which is $346 on the average. And the reason it's relevant is because it made an extremely strong case. In Connecticut, there was a class action that was moving the summary judgment against GE on collateral estoppel grounds because of the New York judgment. Well, it seems to me that Judge Patel made a very, very careful scrutiny of the entire record. She considered all of these issues and- Your Honor, she was given a lot of misinformation. She was told, as far as that New York action, that it only affected about 200 people. It turned out it affected more than ten times that many. She was told that that restitution remedy would never be affirmed. It was unanimously affirmed by the- All right, you say she was told.  We objected, Your Honor. We said that because of that New York action and because of the effect of that judgment in New York, this is an extremely strong case, and a $20 settlement cannot be a fair settlement. She asked questions, was given misinformation, and never gave any reasons for her decisions. Well, did you make a showing? We made an objection, Your Honor. Did you make a showing? Yes. We presented the New York court decision to the court. We presented argument. We presented everything we could present as far as why it was relevant and why this was an extremely strong case. We also say that this is similar to a case where the Seventh Circuit reversed a class action settlement because what happened there was similar to what happened here. There are several actions going around the country. The defendants, seeing they're being strongly prosecuted in other jurisdictions, run to a plaintiff in federal court and agree to an inadequate settlement to stop the other actions going forward. The lower court gave a perfunctory review, and it was reversed by the Court of Appeals in the Seventh Circuit. And this is extremely similar to what happened here. But here, the court below was also given a lot of misinformation. Not only was she given misinformation about the size of New York, the people that were affected. She was given misinformation on how much money they were going to get in restitution. I'm sorry. She was told that these dishwashers that were given up for new dishwashers had no useful life anymore, and therefore the restitution didn't make any sense. And the New York court said that's ridiculous because GE was still selling service contracts on those dishwashers. They were telling the court below had no useful life anymore. She was told that the consumer product safety. I guess I must be missing something. When you objected to the settlement. Yes. Were all these things presented? Yes. The only thing that wasn't available was the appeal because the appeal hadn't been heard yet. The New York decision below was presented to the court, which is the trial court in New York. The Supreme Court decision saying GE had committed deception, awarding full restitution, was decided. That was presented to the court. What GE and plaintiff's counsel said, oh, that's going to get re-argued. It's going to get reversed. Don't pay any attention to it. Well, it was re-argued. It was upheld. It was appealed to the appellate division. Five judges unanimously affirmed it. It was just it was told that the New York case is different than the case before her, and it wasn't, because in New York, in order to get restitution, you had to put in a claim form, sworn claim form, that you bought your new dishwasher because you relied on statements that your old dishwasher could not be repaired. Now, that's basically a proof of claim form in any class action. That's sworn to and signed by the class member. The judge below was told, well, you had to have direct contact with GE in order to participate, and that wasn't true. If you read the appellate division's decision in New York, they said if you got this information in the press, if you got it in the newspaper, if you got it on TV, any way you got it, direct or indirect. Judge Patel had all of this information through the material that you delivered, at least obviously pre-appeal, but at least the record had been established, and those determinations were before her. Is that right? Well, there was misinformation given to her beforehand. Okay. But you have to rely on some source of real information, and the source I gather you're relying on is the actual order of the New York court before the appeal. Yes. Okay. And what is the standard of review that this court applies to Judge Patel's determination? Well, normally it's abuse of discretion, but there are courts of appeal cases saying that you can't review for abuse of discretion if the court never gives you the basis for their reasoning. How do you know what the court's reasoning was unless she tells you, in this case the female judge, what it was? How do you review it? And these are very serious objections. Well, you know what the rule requires that the court consider. Excuse me, sir? You know what the rule requires that the court consider. Yes, but you have to know how the court considered it. What weight did she give? The arguments we made about New York are really serious arguments. We don't know if the court thought about them and how she considered them, what questions she had, because she never gave her reasoning. Now, these are objections, not just she said. The only thing she said at the hearing was, well, the objectives are greedy and they're jealous. What did she – what rule of civil procedure did she violate? She did not use – she abused her discretion in Rule 23 in saying that this was an adequate settlement without giving any reasoning and over serious objections. Two state's attorney generals objected to this, but she still said the objections were only because of greed and jealousy. It's the only thing she said at the hearing as to why people were objecting. You're jealous of fees and you're greedy attorneys. That's the only reason she gave. All this stuff about New York, not mentioned. The two attorney generals, their objections were overruled. Another thing that happened below, Your Honor, the notice. One of the things she did is in the notice, the usual class notice, is she tells the class if you want to object to the plaintiff's counsel's attorney's fees, you've got a certain number of days to object and we'll hear it. There was nothing in the notice of what the attorney's fees were. And we said, how can a class member object to attorney's fees if they're not told what they are?  She approved the attorney's fees. Now, there are courts of appeals decisions saying the attorney's fees are relevant to the fairness of the settlement. It doesn't matter whether GE is paying it or it's coming out of the fund. We didn't get any reason why she approved that notice. It just went out. We didn't give any reason why she approved the settlement. And the people here in this class are getting one-seventeenth of what the people in New York are getting. They're getting $20. The people in New York are getting $346 on the average. It's unfair, and there's no reasoning to support it. I know abuse of discretion is a very tough standard, but this is a case that we believe deserves it. Thank you. So who's going next? This is rather unique, Your Honor. Yes, I know it is. I'll take the podium. Okay. You are? I am. I'm John Yanchunas. I am one of the attorneys representing the Florida Contingent, as the felon said this morning. May it please the Court. The fact that I sit on this side of the room does not mean that I contest the fairness and reasonableness of the settlement. The sole focus of our issue is the decision not to award us fees. And let me turn to what the facts were before the Court. My law firm filed the first nationwide class action in the United States District Court in Tampa under RICO. We also advanced various common law and one statutory claim under a Florida Deceptive Trade Practices Act. The lawsuit was met with a motion to dismiss, and at a hearing before the United States Magistrate, we agreed that the enterprise theory allegation was defective. So rather than have the recommendation go to the U.S. District Judge that a claim of RICO be dismissed, we asked for and were given the right to replead our complaint, which we did, and change the enterprise theory, which happened to coincide with a decision by the United States Supreme Court in the Don King case. Bilberg Weiss, a law firm who is also one of the California counsel, contacted us to seek our cooperation in litigating with them the very same claims. I provided to them the complaint, which they filed in California, which was eventually consolidated with the case that Mr. Donaldson was lead counsel in. Wouldn't that trigger at least some sort of co-counsel relationship, or at least you may be counsel to the other counsel, which might suggest that you could bill them directly for appropriate fees? I've never thought about that. I will tell you why I think we were, in effect, class counsel in this case, and what stopped our aim from going forward. Well, I'm trying to help you out. The trouble is you never made an appearance in this case. I did, Your Honor, several times. In this case? Well, I made an appearance. In front of Judge Patel? Yes, Your Honor. Before the attorney fee phase? Yes, Your Honor. When was that appearance made? I entered two appearances. The first appearance was at the hearing on the preliminary approval of the settlement agreement. No, no, what I mean, pre-settlement. I'm talking about the very beginning. You were not named counsel at the time this case was filed. You had plenty of opportunity to make an appearance prior to the settlement phase, and it never happened. I may never have filed a notice, but I appeared on behalf of the plaintiffs in California, had a deposition in Kentucky as a result of the coordinated efforts to advance discovery against V.E., and I was the only one there for the plaintiffs here in California, and I took the deposition of several present or former employees of V.E. while Mr. Donaldson was negotiating a settlement that I had helped him craft with V.E. The attorney for V.E. in-house, and they had an outside counsel there, and they knew, as I knew, that settlement negotiations were ongoing. The depositions did not go into the second day because it was decided that evening, communicated to me in the morning, that V.E. had tenderly agreed to settle that case, and I communicated with Mr. Donaldson, our lodestar, which he then communicated to V.E. We continued to work on the settlement agreement, and I put input into the drafting of a final product. We gave them, that is counsel here in California, our complaint, and two of my clients serve as plaintiffs in this case, Ms. Chalmers and Mrs. Perrotta. But let me make sure I understand this. What did the district court do wrong? I think the judge's focus on what we did was too restrictive. It was a myopic view, and her ruling was that we had only put, had input and comment in the final settlement proposal, and I don't think that's accurate, Your Honor. Okay. Now, how was the district court supposed to know, how did the district court know that you had done the drafting of the complaint? Well, Mr. Donaldson filed the declaration. I filed the declaration. I appeared before the judge at two points prior to the issue of fees was ever placed before the court. Declaration that it was your work? Is that what was filed? We filed a declaration describing all of the things we did in connection with reaching a compromise of this class action, as did Mr. Donaldson. Then the judge came back to us and said, the way I understood it, tell us specifically what you did on the settlement, which we understood to mean the actual drafting of it. And we filed a supplemental declaration. And Mr. Donaldson filed a supplemental declaration. Mr. Yanchunas, you see, I tell you what my problem is. Perhaps you did all this, you know, and you probably did. And maybe you have a good claim for a quantum merit against Mr. Donaldson. I don't know. But my problem with your pursuing the fee application here is the statute is pretty clear, the CCP section, that only a party can be awarded fees. And you're not a party. You don't represent a party. You have no client. You have no dog in this case here. Two of my clients are plaintiffs in this case. Let me just say. Not as clients of yours, as Judge O'Scanlon's question brought up. You're not showing on the complaint as an attorney for the plaintiff. Let me just back up one point. So how do you come within the statute is my question. Your Honor, we were attorneys which resulted, which assisted in the result achieved in this case. I'm not questioning that. My question is how do you come within the statute which applies only to a party having a right to obtain fees? Aside from the fact that our plaintiffs, our clients are plaintiffs, the settlement agreement anticipated. You're a client in some other case. Doesn't mean you're a client in this case. No, no, no, Your Honor. Mrs. Chalmers and Mrs. Spirota are our clients in this case. They can't be your client unless you're the attorney. You're not the attorney of record here. They can't be your client in this case. Let me tell you what happened. That's contrary to the rules of professional conduct in the state of California. Your Honor. They can't be your clients in this case because you're not the attorney of record. So let's start from there. I will start from there. How do you settle the fees under the CCP section? Okay. If this is where I'm left at the day, well, then I know that I did my ethical obligation. At the point in time when the settlement agreement was ready to be signed, it was anticipated that a minute complaint would be filed with my clients, Mrs. Chalmers and Mrs. Spirota, out of a concern at the last minute from one of my partners that we might not get paid for our time. I did call GE's counsel, and he made it known that they weren't going to pay us anything. My clients wanted us to get paid. The same lawyer presented the position to me, was I willing to blow up this settlement agreement? Based upon my client's insistence that we get paid, and you know what I did? I said I wasn't willing to do that. I couldn't do that. I had crafted something that I thought with Mr. Donaldson's assistance. You're talking about what might have been, not what the record is. I understand that, and that's all I have. Well, let's not. We can't decide a case on what might have been. Counsel, let me ask you, is your contention that your fee award should be in addition to what is already administered or approved by Judge Patel, or that you are contending for a share of what has already been approved? No, Your Honor, I'm not contending for a share. I'm contending for some in addition to that. I understand the way it played out. That's the best that I can give to this court. And if I did something wrong in judgment the rest of my career, you know, I'll remember that. But I thought what I did was right. And the fact of the matter is, General Electric knew I was there. General Electric encouraged my support of a settlement. And if at the end of the day it's found to be wanting to be removed. You may well have a claim against General Electric or the other plaintiffs, I guess. I don't make that claim. The plaintiffs, I'm sorry, for a share. But we understand your position. I appreciate your time. Thank you. Thank you. May it please the Court, my name is George Donaldson. I'm here on behalf of the class plaintiffs. My firm was certified as class counsel in respect to the settlement that's now before the court. So you're arguing the adequacy of the? Yes, I am, Your Honor. Let me start first with the issue of standing, since it was the first issue that was raised. And while it is laid out in our brief and I'm not going to spend much time on it, I think the notion that somehow this court has already resolved that issue years ago in Marshall v. Holiday Magic really overstates the holding of that case. I think the question is fairly joined by the Supreme Court's decision in Devlin. They were very careful to limit that decision to B-1 class actions. And for good reasons. Those are class actions where one has no right to opt out, exclude themselves, pursue their own remedies if, in fact, a class settlement is approved over their objections. Here, in contrast, the court gave the objectors the opportunity to opt out. They had their own actions pending. They had every right to pursue them and continue them. They chose not to. And in those circumstances, I think there's a very fair question as to whether or not they have standing. And I submit in the unique circumstances of this case. Of course, you know, in a case like this, if they have no standing to appeal, they're really left without any remedy at all. Well, they are, but only by their own choice. They've decided not to exclude themselves from the settlement. They made a choice at that point. No, I mean, if someone with a claim for $20 opts out, I mean, what can you do? I mean, you can't pursue that claim to justice, can you? I mean, it's just not worth the time and effort. You have to. And that's the reason for the class action. You have to pursue it in the context of a class action. So the only way they're going to better themselves is to get a better class settlement. So they really have no practical remedies. Isn't that true? Well, I think in the case of certain people, that is true, and I would agree with that. I would say in the case of the people that are here objecting today, I don't think that's true. I mean, you can look at the coterie of lawyers that we have here, and they've said they have a. Well, the reason they have a coterie of lawyers is because they're hoping to get back into the class action, not because they want to pursue the $20 claim individually. I understand Your Honor's position, and I think that there is a tension there, and I agree with it. I understand that the argument is that you should be able to go forward. But if you read Devlin, and I think it's important to remember this about Devlin, Devlin says that your rights with respect to a settlement, even in a B-1 case, are limited to objecting if the district court disregards your objection, and they use that term several times, disregard your objections. That's not what happened here. Judge Patel entertained all their objections. Now, it's said by Mr. Levy that Judge Patel didn't say anything, didn't consider anything other than to conclude that the lawyers were jealous and greedy. That's just not fair, and it's not true. And if you read the transcript as opposed to the argument you heard today, you will see that Judge Patel went carefully through all the factors relevant to the settlement. She queried the lawyers for the objectors on several occasions as to what they thought was a fair settlement. If they're coming here claiming that this one's unfair, what do they think is fair? And they couldn't answer the question. They were asked it several times. And, in fact, with respect to the New York decision, which, again, they claimed Judge Patel was disregarded and didn't have information about, that's not true either. Judge Patel analyzed the New York decision and asked them at the hearing pointedly what their position was. Counsel, would you respond to, I believe it was Mr. Levy's point, that there was misinformation communicated about the New York settlement? Yeah, that's not true. What was communicated? First of all, the opinions by the New York judge were tendered to Judge Patel. So in the first instance, we talk about what is a matter of record, and that's put before. Now, that's clearly not misinformation. But you must have some sense about what he's talking about when he talks specifically, makes the allegation that there was misinformation communicated about the number of settling plaintiffs and the amount and so forth. GE made certain representations. I was not in a position to do that. I had no information to make any sort of representations. What I was able to do was simply read the decision and see what the court said as to what one would have to prove in order to be a participant in the New York action. And it was a far more difficult burden of proof and a far more limited class of people that are embraced by the class settlement. The class settlement gives relief to everybody, no matter what their circumstances are, if they fit within the group. In New York, you have to go further. You have to prove that you, in fact, would not have bought a dishwasher unless you had read these disclosures, these allegedly false disclosures, and disclosures that we believe are false as well, and acted in reliance on them. Now, GE gave a quantification to the court as to how many people they thought at that point in time would be entitled to recover. As I understand the matters that have been submitted subsequently, the number is larger. It's still far smaller than would have been the case here. But I don't call that misinformation. I call that people reading the decision and telling the judge what they think may ensue in a subsequent add-on procedure that had not yet then occurred in New York, that subsequently did occur. And it involves submission of declarations under oath, challenges to those, and there's no way one would know those numbers until the actual process occurred. Now, lastly, I want to point out about New York. I mean, what we have in this case is we had a claim that people who bought a dishwasher for $229, that's what the basic dishwasher cost, what did they pay for it? After the rebate, they paid $154 for it, and they gave up an old machine. On top of that, they got $20 or $50, depending on whether you look at it from the cash standpoint or the standpoint of the warranty. So people have a $229 machine for which they either paid $134 or $104. And the question then becomes, under a restitution theory, are they entitled to more? I look carefully at the law. I frankly disagree with what the New York court did. I think it's great if you can get that, but I don't think it's something that could have been obtained in this litigation. I don't think lawyers should be making settlements based upon a scenario that disregards what I believe the applicable law of restitution to be, which is the difference between what you receive and what you part with. Here they received $229 in value, and you parted with $125. Now you also parted with an old machine. It only cost $200 to buy it new. Is it worth $100 or $75 after it's been there for 12 years? This is a compromise. Is it a perfect settlement? There is no such thing as a perfect settlement. We tried to craft what we thought was the fairest settlement in the circumstances, taking into account the risk of litigation. Plus, we've been before Judge Patel for some time. We filed the preliminary injunction motion. She laid out in clear detail what she thought the problems with the case were. We took that into account. I think that's what responsible lawyers are supposed to do, and that's what I think we did in this case. Lastly, on the subject of jurisdiction, Churchill Village, when it was initially brought, was not brought as a class action. It was brought as an individual action. There's no case that I'm aware of in this circuit that holds those sort of cases, non-class actions brought under 17-200, are subject to the type of aggregation rules that apply to class actions. And, in fact, there were two cases down in the Northern District of California where this was brought in which the same issue was framed and the courts held there was jurisdiction. You could look at the cost to the defendant for purposes of determining the value of the case.  I'm sorry, Your Honor? If we don't agree with those cases, we have to throw this whole litigation out, don't we? No, I don't think you do, and I'll tell you why you don't. What's the alternative? Well, there's two different alternatives. One, in the Gibson case, the court held that an attorney's fee claim could be taken into account in considering jurisdictional amount. If you only have a single plaintiff case brought under 17-200, then there's no theory that I think applies that you would aggregate this to other people other than the only named plaintiff that's in the case. Well, it's the same theory on which the 17-200 is based to begin with, so there's no reason to treat the attorney's fees claim under there than there is to treat the basic claim. So if you're going to disaggregate the underlying claim, you have to disaggregate attorney's fees also. Well, I don't think you do, Your Honor, with all due respect, because the attorney's fee is unlike the other rule. The other rule is going to be a court-made rule on aggregation. However, with respect to the attorney's fee, you look to the underlying statute, and the underlying statute, 1021.5, I believe clearly applies to the party, and the party is not this undifferentiated group of people in the general public. And keep in mind, in this case, I never thought of this case when it was brought as being a case that's limited to the economic loss to the particular owner of the dishwasher. When we first brought this case, the issue really at the forefront then was the fact that these dishwashers were still in the stream of commerce and they were a safety hazard. As such, the people that are affected are truly the general public. I mean, if an apartment has one of these things and it catches on fire, it's certainly possible that the damage can spread to people other than those people that simply own the dishwasher. But let me get back to your point, Your Honor, about whether you have to throw it out. There's a second ground in this case, wholly apart from diversity for jurisdiction. There is a separate RICO case that was brought by another California counsel that was consolidated with this case. That case was on file for several years before this settlement came along. There's a suggestion by the objectors that somehow this was all concocted to create jurisdiction, and it's not true. The RICO claim asserted in the other complaint, which ultimately became part of the consolidated complaint, is a separate basis for federal jurisdiction. Well, it's only a separate basis if it's non-frivolous. Correct, and I believe it is. And let me explain why I think it is, Your Honor. After Churchill Village was brought, after the RICO claim in this case was asserted, the Supreme Court issued its decision in Cedric. What the decision in Cedric discusses, as I'm sure Your Honor knows, is distinctness and the question of whether or not you have distinct persons in an enterprise for purposes of Section 1962C. And what they held there is the employees of a corporation are sufficiently distinct so that the employees can conduct an enterprise through the corporation. Those same allegations are contained in the complaint in this case. It is alleged that the enterprise. I don't think so. This is not an employees and a corporation case. This is a corporation and, you know, another part of the corporation case. Well, but in this case, the allegation is that the recall campaign run out of the separate division in Louisville conducted an enterprise and that the person. In effect, you're saying that either the division, the Kentucky division, or the program in the division is the enterprise, right? No, it's a part of the RICO defendant is the enterprise. That's what you're saying. Well. That's the allegation. I don't think our case law, Ninth Circuit case law, supports that. Well, I think. It's been clear for years. Well, that's right. That's the reason I say, you know, you know, I don't know how you could say it's not. You know, it's a non-frivolous claim when the circuit law is very clear that you can't have that. Well, but the circuit law does hold even prior to Cedric that employees can engage in RICO activity with the corporation as the enterprise. And in particular, the case. You don't have an employee here as a RICO defendant. No, but I don't think you need. Well, I mean, it's not that case. But I know what you're arguing a different case. This is not Cedric or Cedric. No, but I don't know that you need a corporate employee as a defendant as such. And there is reference in the complaint to the employees conducting. That's what Cedric was. I understand that. But I don't think that the holding is limited to the notion that you have to name the employee in order to state a RICO claim. It says, what do you need in order to establish a 1962 C enterprise claim? And I think at the end of the day, you know, Your Honor may well be right. We may lose that claim. I understand that. But the real test is whether it's frivolous. And I must admit, I don't believe that it's in any way frivolous in light of Cedric or this Court's prior holdings. What did the district court do with respect to the jurisdictional issues? Well, the district court entertained the arguments, heard them, and concluded that they were more in the nature of motion to dismiss arguments rather than any claim of frivolousness. And she therefore held that there was jurisdiction. Based on what? Federal question jurisdiction? Well, I don't know that the judge – I think the judge's view was that a RICO claim was stated and that there was federal jurisdiction as a result of it. Clearly, with respect to diversity, I mean, the case had been pending for several years, and she obviously thought there was jurisdiction. She didn't make a statement in the hearing that I recall to the effect that, yes, I believe there's diversity. Well, what about diversity? Well, I think there is adequate diversity jurisdiction. And the reason I think that is severalfold. One, this is a non-class 17200 claim. There is no case in this circuit that's been rendered to date that I'm aware of that holds that that results in a finding that there cannot be diversity jurisdiction. There's no case on the other side either, is there? Well, it's an open question, Your Honor. You're absolutely correct. Although I must say this, and in fairness it's not directly on point, but Myers, the decision by the Ninth Circuit in Myers, that came out of the Northern District of California. That was the very issue raised in Myers. And Judge Oreck held, no, in a non-class action 17200 case, we will look at it from the defendant's perspective. That then goes up to this court. This court affirmed the ruling in that case. Now, the issue of jurisdiction that was framed by Judge Oreck below is not a part of this court's opinion. I readily recognize that. But nevertheless, it was certainly a key issue because that's what they moved to dismiss on. Judge Oreck rejected the argument. It came up here, and this court ultimately affirmed the ultimate decision in Myers. So, yes, there was no case either way on this question, although it just seems to me that if you have a single-party case and you can bring a 17200 case as a single-party case and you can proceed all the way to trial as a single-party case, then I don't see why there's anything specific about the 17200 that necessarily means there's no jurisdiction. So I believe that the court used it. You did mention the amount of controversy. Well, the amount of controversy really turned on the issue of what the cost of the injunction was to the defendant at the time the case was first brought. That was the first argument. But the defendant's view approach is not Ninth Circuit law, is it? Well, it is Ninth Circuit law if you're in a non-class action context. It's clear that in a class action context it is not the Ninth Circuit law. And the Ninth Circuit, in the Ford Motor decision, went on to say that should be the rule in all multi-party cases. But, again, you get back to the question of, you know, is a 17200 case necessarily a multi-party case? I don't think it is. You could prosecute it all the way through trial and get a judgment without ever having anyone other than a plaintiff involved, a single plaintiff, without bringing it as a class action. So there's that. And then the subsequent gifts and decision, but as Judge Tachima correctly pointed out, I mean, you could certainly come to the same view on that issue as you would on aggregation. So I think taken together, the Court had adequate jurisdiction, both diversity and RICO. I believe the RICO claim clearly states a cause of action. And I just want to point out, the other thing to keep in mind here is, you know, these other parties brought these cases subsequent to Churchill Village. They essentially duplicated what we did in Churchill Village. But they were pending for a fair period of time. They knew about the California case. They even came on up here to some of these things. Not a hint was ever raised that there wasn't jurisdiction until the moment we come into court with a settlement. All of a sudden, there's a big jurisdictional issue raised. And I think that it really goes to the question of what the case is all about. I don't have anything further. I'd be happy to answer anything you have. What about attorney's fees? Maybe I should ask you right now, would you be willing to share some of your fees with your counsel? I guess I would answer that question in this way. One, the attorney's fees that were awarded by Judge Patel were awarded based, you know, upon our hours. A determination was an appropriate number of hours with a modest multiplier. Judge Patel, when she issued her decision, ordered us to allocate the fees in accordance with her order. I read that to say that as a contractual matter or as a legal matter or as part of the court's order, I'm not supposed to be turning around and giving fees out inconsistent with the order. I think the fact of the matter is, is I think, honestly, that Mr. Yanchunis's firm is entitled to attorney's fees. I think the party they're entitled to them from is GE, however, not me. But, you know, they participated in this action, and I was led to believe all along the way that they were going to be paid attorney's fees, and it didn't happen. And I think it's an extremely unfortunate circumstance. I do think the remedy, though, in my view is. . . By the way, if we agree with that, then you agree then that GE has a right to challenge the amount you were awarded? Well, I do not think they do, and the reason I don't think they do is that's not part of our contract. Now, we disagree about that, but the contract said they're going to pay with the district court order, and they have a reserve of the right to appeal. So the notion that they're now going to come back after, you know, after the proceedings went on, in accordance with how we contracted, and now claim, well, you ought to reopen it. . . But if the settlement is upset, all bets are off. If the settlement's upset, it's a different issue. But that's, you know, when we're talking about the fees and sharing and reopening it, I'm presuming a contrary circumstance. Well, to the extent that the fees issue is disturbed, it seems to me that that's reopened. Well, if the fees issue is disturbed, the fees issue being whether or not Mr. Yanchunis' firm was fairly treated or not, and the underlying settlement itself is still preserved, the fairness of the settlement, if that happens, you know, I still think the contract's in place, and I have my contractual arguments. Now, whether I win or not is a different issue, but I think I have those arguments. Well, it just occurred to me, and this may be a point for the presiding judge or chief judge, if General Electric is potentially exposed here, maybe we ought to hear from their counsel on that point, because obviously you and Mr. Yanchunis are on opposite sides of the room, but you're both in agreement on this point. Yes, I think that's correct. Any other questions, I'll be happy to answer. No, thank you. Thank you. We'll hear from you. May it please the Court, I'm Hal Bogart, and I represent the General Electric Company. And in the time that I have left, I'd like to talk a little bit about the fee appeal and about the New York case in response to some of the things that have been said, and any other questions the Court may have. I'd like to start off and respond to some of these questions about the New York case. It was a summary proceeding before the trial court in New York. It was brought by the Attorney General of New York as a summary proceeding. There was no right of cross-examination. There was no discovery. There was no evidentiary hearing. And because it had gone a fair distance in the proceeding, and because we already had the adverse ruling, we decided to exclude New York from the settlement. We expected to get that case turned around. We expected to win it on re-argument or on appeal. We didn't, but we thought we did, and we didn't want to appear as though we were running away from it. Judge Patel had that case in front of her. She heard about it at the fairness hearing. She saw writings about it from the abjector's papers. She was fully aware of it. And nothing has changed since the fairness hearing except for the fact that we didn't win that re-argument and we didn't win that appeal. That opinion is the same one that she reviewed at the time she made her fairness determination is the one that's in effect today. Now, we know from her views as expressed in the preliminary injunction hearing and in her fee order how she felt about the merits of the case. And we also know that another judge in New York felt differently. But just because another judge felt differently doesn't mean Judge Patel was wrong about how she felt. It was a very different case. At the fairness hearing and at the preliminary hearing, we did not say anything about what exactly we thought the restitution amount would be. It was all set out in the opinion. There was nothing for us to elaborate on there. One thing we did say was that we hoped that the amount would be limited to about 200 New Yorkers. And the basis for that was that there was a letter sent out to about 5,500 people nationally, 200 of them from New York, and it said that repair was not an option under the recall program. In the context of the letter, it was clear to us, we thought, that that meant just what it said. It was not an option under the program. The court found that that could have been interpreted by consumers as meaning you couldn't repair the dishwashers at all. So the Attorney General of New York contacted us, and with the assistance of the CPSC, we sent out a correction letter. We thought that that would affect only 200. The court had subsequently determined that even people who got word of mouth of that communication would have a right to participate, and that's what jumped the number up from 200 to 2,000. But we didn't make any representation that that was the only group of people that could be affected. The point of the New York case was that it was a very limited group of people. People had to file individualized proofs of claim. They had to swear under oath that they had relied specifically, and but for the representations, they would not have purchased another dishwasher. And as a result, only about 10% of those people that were eligible even participated, as compared to this class where 100% of the 90,000 people not only didn't have to file any papers, but they got something of value. So we think there's a very significant difference, and in any event, the trial court clearly considered the two cases. On this attorney's fees issue, what is your response to Mr. Yanchunas' argument? First of all, we do believe that the law firm's attempting to recover the attorney's fees are not parties. They don't have standing, and there were never parties in this matter, and the statute speaks in terms of rights of legal parties under the private attorney general statute. We don't think they have standing. More than that, we simply say that Judge Patel's opinion will pass almost any standard of review, particularly an abuse of discretion standard. Now, Mr. Yanchunas makes the point that you were aware of his participation in this from the very beginning, or very early on, anyway. We were aware that he was participating in a Florida case, and multiple Florida cases. Most of them were dismissed. We were aware that he invited himself to a deposition, although he was never a counsel of record, and we objected to his participation in that deposition. We went on record in the deposition and said, we object to his being here, he's not counsel of record, he's not entitled to participate, and he's not been admitted pro hoc vicee or anything like that. We objected. Because the trial day was on us, we didn't pull our witnesses and say there would be no deposition that day, but we made our position known. We did not know that he... In the deposition, what did he represent his right or authority was to be present? He represented... Did he put something on the record? I was not at the deposition, but I am confident, Your Honor, that he said that he was taking the deposition on behalf of the California plaintiffs. I don't know what else he could have said, but I have to assume that. But as far as his participation in the settlement negotiations, he didn't participate. His conversations related were one single telephone call where he called and said, I understand that you're not going to pay me, and the answer was, that's absolutely correct. We did not know. We were very clear about that. We didn't know who was going to come out of the woodwork and ask to participate in terms of fraternity's fees. We were not just thinking about Mr. Yanchun's, but we were thinking about all the other lawyers who had filed these lawsuits. None of them deserved any compensation and had contributed anything toward the settlement. And that's why we wrote the settlement agreement the way we did. He concedes he has no contractual right to fees, and Judge Patel so found. So in order for him to... He concedes he has no contractual right. If he isn't giving up too much there, he might have some implied rights with respect to the California attorneys. I was really talking in terms of with respect to the settlement agreement between GE and the plaintiffs. In this litigation. Exactly. So if he's going to obtain any fees, he's got to do it under the California private attorney general statute by showing that his litigation resulted in conferring some benefit. And Judge Patel made some very detailed findings on that, and I believe that they're very solid. It's a thoughtful analysis, and I think the matter is very straightforward. Any further questions? Thank you. We have a little time for rebuttal here. Very briefly, Your Honors, on the adequacy of the settlement. This is the only case I know where six judges have ruled that GE committed deception and are liable for full restitution and yet to get a $20 settlement. Judge Patel asked for four pieces of information about the New York case. You're talking about the judges in New York? Yes, six judges, one below, five above. Judge Patel asked about this. We brought up the New York case. She asked for pieces of information. She asked the size of people affected. They told her 200. Turned out to be over 2,000. Now, they said, well, we were just guessing. We weren't sure. In their briefs to this Court on pages 14 and 15, they give the same information. They say you had to have directly contacted GE to participate. That turned out not to be true. They said it's only 200 people. That wasn't true. So they gave misinformation. They gave misinformation about the difficulty of the proof. All the proof is is a proof of claim. It's a statement saying I went to board the new dishwasher except I thought I couldn't repair my dishwasher. That is not a difficult piece of proof. They were given misinformation about the chance for reversal. They said there's no way this is going to be upheld. It was upheld unanimously. Now, we don't know how much all this information weighed on Judge Patel, but she didn't give any reasoning. I would like the reasoning. I'd like to know how much this information weighed on her. You have a $346 recovery for the people of New York, a $20 recovery here. That's 17 times factor. This settlement is inadequate. It should be reconsidered. Thank you. Did you tell her that you didn't think she gave adequate reasons? Did anybody? We didn't get any. All we got was a judgment saying I approved the settlement. We didn't. That's all we got. Okay. I may have a couple of minutes, but I may have some to spare. Kushner was decided June 6th, June 11th of 2001, and the settlement wasn't proposed until July 31, 2001. So it was quite clear by the time the settlement was proposed that there was absolutely no colorable base on which they could have made a RICO claim. The distinction is between the person that you sue who is the defendant under 1962C for corruptly conducting the affairs of an enterprise, which is separate. You sue the defendant who must be distinct from the enterprise. The fact that GE did this by a division doesn't make it separate. But that's Brittingham. The distinction, the distinctness that they would make is between a noun and a verb. Those are not legally distinct entities. With respect to diversity on. Wait a minute. Explain that to me. What do you mean by distinction between a noun and a verb? You lost me on that. What they're saying is that the person that you sued, GE, conducted the affairs of an enterprise called the GE restitution or recall plan. That is the activity. That is precisely. There are a host of cases that say that you cannot, that the distinctness does not refer to the defendant and its activity. With respect to the diversity issue, they abandoned it anyway. But Macaulay leaves no doubt that 17200 is not available. The issue is the nature of the wrong that was done, the damage that you've suffered, not the cause of action that you assert to get there. What about the cost of the injunction issue? That that Macaulay deals with precisely that the only way that you can get cost of injunction is on a per defendant, per defendant, per plaintiff basis. Unless and only unless there is a an interest in common among the plaintiffs, like in common property or something like that. The called the old true class cases before the unification under Rule 23. Macaulay leaves no doubt in that respect. Your Honor, then finally, the issue of jurisdiction was not just ours to bring. That was that's a matter of is or isn't. And the judge's obligation is to raise that even if nobody raises that. So even if this court were to rule that Devlin doesn't give a standing, and I think you can't read it that way. Nonetheless, Judge Patel should have determined whether there was federal jurisdiction, found that there was none and no colorable basis, dismissed the case, period. Just like in Macaulay, which had gone a way far distance before it was found that there was no federal jurisdiction and just remanded. Here, Mr. Donaldson's case was brought solely as a federal case. There's no place to remand it to. It should just be dismissed. Thank you, Your Honor. Thank you. I'll be very brief. What is important here is the causal connection between the Florida litigation and the result achieved in this case, a settlement on behalf of a group of consumers nationwide. The way the litigation has a causal connection is the lawyers who advance that claim on behalf of the consumers who are members of the putative class. The case was filed. The motion for class certification was filed, and we did everything we could to advance the ball on behalf of the consumers. The fact that we don't have a notice of appearance on record should not, under 1021.5, preclude us from a fee award. When I was growing up and trying perhaps to decide what I wanted to be, I remember watching Perry Mason religiously. And Perry Mason was rather unique in that there was always somebody who stood up in that one-hour program who admitted to guilt. I did not expect GE in their briefs or before Judge Patel or even today to admit that our firm or our law firms in our lawsuit had a causal connection, and, in fact, they continued to deny it. I would ask the court to look at the record, and while I have all the respect in the world for Judge Patel, I think she made a mistake, and I believe there is that evidence, and I think she abused her discretion. Thank you for your time for this morning, Your Honors. Thank you. The matters just argued are submitted for decision.
judges: Schroeder, O'scannlain, Tashima